Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III ESPECIAL

| | | |
|---|---|---|
| ALEXANDRA SALGADO VILLAFAÑE<br><br>Peticionaria<br><br>v.<br><br>LUIS ALONSO CORTÉS<br><br>Recurrido | KLCE202401241 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso núm.:<br>A DI2008-0273<br><br>Sobre:<br>Divorcio (T.C.) |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores

**Figueroa Cabán**, **Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de febrero de 2025.

Comparece la señora Adriana A. Alonso Salgado, en adelante la señora Alonso Salgado, quien solicita que revoquemos la *Resolución* dictada y notificada el 28 de octubre de 2024 por el Tribunal de Primera Instancia, Sala de Aguadilla, en adelante TPI. Mediante la misma, el TPI reconsideró una *Sentencia* previa y declaró no ha lugar la reclamación de alimentos entre parientes presentada por la señora Alonso Salgado.

Acogemos el recurso como uno de apelación sin cambiar su clave alfanumérica y por los fundamentos que expondremos a continuación, se confirma la *Resolución* apelada.

**-I-**

En el contexto de un pleito de divorcio, el señor Luis Alonso Cortés, en adelante el señor Alonso Cortés, presentó una *Moción Solicitando Relevo del Pago de*

*Pensión Alimentaria.*[1] Adujo, que su hija, la señora Alonso Salgado, cumplió 21 años de edad por lo que procedía el relevo del pago de la pensión alimentaria de inmediato.

Por su parte, la señora Alonso Salgado presentó una *Oposición a Moción Solicitando Relevo del Pago de Pensión Alimentaria.*[2] En esencia, arguyó que es mayor de edad, pero continúa sus estudios universitarios en farmacia a tiempo completo y con buen aprovechamiento académico. Alegó, además, que el señor Alonso Cortés tiene ingresos suficientes para asumir la pensión alimentaria a su favor hasta que termine sus estudios.

Evaluada la *Moción Solicitando Relevo del Pago de Pensión Alimentaria*, el TPI la declaró no ha lugar.[3] Determinó que la reclamación de la señora Alonso Salgado se hace en su capacidad de hija adulta universitaria. Bajo este supuesto, cualquier determinación sobre relevo de la pensión está supeditado a lo que el foro sentenciador resuelva en cuanto a la pensión alimentaria para la hija adulta.

Posteriormente, se celebró el juicio en su fondo. Luego de un examen de la prueba testifical, consistente en el testimonio de la señora Alonso Salgado, y de la prueba documental admitida, el TPI emitió una *Sentencia* mediante la cual le impuso al señor Alonso Cortés, entre otras partidas, el pago de una pensión alimentaria entre parientes.[4]

En desacuerdo, el señor Alonso Cortés presentó una *Moción de Determinaciones de Hechos Adicionales,*

---

[1] Apéndice de la peticionaria, págs. 19-20.
[2] *Id.*, págs. 21-23.
[3] *Id.*, págs. 24-25.
[4] *Id.*, págs. 31-42.

*Enmiendas a Determinaciones Iniciales, Conclusiones de Derecho y Reconsideración de la Sentencia Dictada.*[5] Adujo que el foro sentenciador cometió varios errores de derecho, a saber: (1) "la Sentencia no contiene determinación de hecho alguna sobre "los beneficios directos e indirectos que recibe de terceras personas, el perfil de sus gastos que no son indispensables y su estilo de vida"; (2) determinó que la señora Alonso Salgado cursa estudios postgraduados y tiene aprovechamiento académico sin evidencia; e (3) impuso la pensión alimentaria sin sopesar los criterios de la propia sentencia. En su opinión, la señora Alonso Salgado no demostró que tenía necesidad económica y, por el contrario, tenía recursos suficientes consistentes en becas y préstamos estudiantiles para cubrir todos sus gastos, incluyendo los asociados a sus estudios, el seguro médico y recreación.

Transcurridos varios trámites procesales que resulta innecesario pormenorizar, el TPI acogió la moción del señor Alonso Cortés y dictó una *Resolución* en la que reconsideró la *Sentencia* y dejó sin efecto la pensión alimentaria a favor de la señora Alonso Salgado. Formuló las siguientes determinaciones de hechos:

1. La alimentista inició un bachillerato a sus 18 años en el área de química en la Universidad de Puerto Rico, Recinto Universitario de Mayagüez en el año 2019.

2. La alimentista estudió durante tres años en el Recinto Universitario de Mayagüez y tuvo buen aprovechamiento académico.

3. Aunque la alimentista no culminó su bachillerato en el Recinto Universitario de Mayagüez, completó los prerrequisitos para cursar estudios de farmacia en la Universidad de Samford, Alabama.

---

[5] *Id.*, págs. 47-59.

4. Desde que la alimentista inició sus estudios en Mayagüez, no los interrumpió hasta que inició sus estudios en el estado de Alabama.

5. La alimentista declaró, que, la matrícula de los estudios por ella cursados en Mayagüez fueron cubiertos con ayudas federales de la FAFSA.

6. **La decisión de la alimentista de iniciar estudios en farmacia en la Universidad de Samford, en Alabama no fue consultada con su padre.**

7. La alimentista declaró, que, fue aceptada en un programa combinado de bachillerato y doctorado en farmacia en la Universidad de Samford, Alabama.

8. La alimentista declaró, que, debido al programa al que pertenece desde el primer año tomó cursos de doctorado.

9. La evidencia documental demostró, que, Adriana Alonso Salgado aprobó cursos y tuvo aprovechamiento académico para el periodo de agosto a diciembre de 2022 y enero a mayo de 2023.

10. Previo a trasladarse al estado de Alabama, la alimentista indagó sobre las ayudas económicas que podía recibir para sufragar los gastos que conllevaba su traslado para continuar con sus estudios en farmacia antes de así decidirlo.

11. **La alimentista solicitó y obtuvo ayudas económicas para sufragar sus gastos.**

12. **Luego de que se pagara la matrícula y el plan médico de la alimentista, el sobrante de los préstamos estudiantiles y becas le era desembolsado a su cuenta.**

13. **Para el periodo de "fall 2022" luego de haberse cubierto los cargos de matrícula y plan médico, la alimentista recibió la suma de $11,448.00, como desembolso de los préstamos estudiantiles y becas.**

14. **Para el periodo de "fall 2022" la alimentista trabajó y recibió una suma total de $631.32, en pago de nómina.**

15. **Para este periodo de "fall 2022" la alimentista recibió un ingreso total de $12,079.32, adicionales a la pensión alimentaria recibida de su padre y a las ayudas que admitió, recibía de su madre y abuela**

materna luego del pago de matrícula y plan médico.

16. **La alimentista admitió recibir ayudas de su madre y su abuela materna,** sin embargo, no informó la suma recibida por estas ayudas ni se presentó evidencia documental a los efectos.

17. **No se demostró que el alimentante consintiera a la obligación de financiamiento de auto que asumió la alimentista.**

18. La alimentista pagó la suma de $5,000.00, como pronto pago para el financiamiento de su auto.

19. La alimentista declaró, que, paga por el financiamiento de su auto la suma mensual de $297.00.

20. La alimentista declaró, que, mensualmente los costos de gasolina ascendían de $60 a $80 aproximadamente, sin embargo, no se presentó prueba documental a los efectos.

21. La alimentista declaró, que, los costos de mantenimiento vehicular ascendían a $40 a $50 aproximadamente y debía dárselo cada tres meses.

22. La alimentista indicó, que, su vehículo necesitaba gomas nuevas, cuyo costo ascendía a $800.00, sin embargo, no se presentó prueba documental a los efectos.

23. La alimentista declaró, que, el costo de marbete del vehículo es $258.92 y se renueva anualmente.

24. **Para el periodo de "spring 2023" la alimentista recibió como desembolso de los préstamos y becas estudiantiles la suma de $20,631.00.**

25. **Para el periodo de "spring 2023" la alimentista trabajó en la farmacia CVS recibiendo la suma de $169.99 en pago de nómina.**

26. **Para el periodo de "spring 2023" la alimentista recibió como ingresos una suma total de $20,800.99, sin incluir la pensión alimentaria que recibía y las ayudas económicas que admitió recibía de su madre y abuela materna.**

27. **En el primer año de estudios de la alimentista en Alabama, contado a partir de agosto de 2022 a mayo de 2023, la alimentista recibió como ingresos la suma total de $32,880.31, sin incluir la pensión alimentaria**

que recibía y las ayudas económicas que admitió recibía de su madre y abuela materna.

28. **En el primer año de estudios de la alimentista en Alabama, contado a partir de agosto de 2022 a mayo de 2023, la alimentista admitió haber recibido $103, $591.00 en ayudas económicas para sufragar sus gastos universitarios.**

29. **Los ingresos recibidos por la alimentista en su primer año de estudios en Alabama ascendentes a $32,880.31, fueron depositados en sus cuentas luego de haberse cubierto los cargos de matrícula y plan médico.**

30. **Para el periodo de agosto de 2022 a mayo de 2023, la alimentista residió en un apartamento rentado por ella y otra compañera.**

31. El contrato por el arrendamiento del apartamento se firmó el 18 de agosto de 2022.

32. **El canon mensual pactado por el arrendamiento del apartamento era ascendente a $1,122.00, el cual se dividía a la mitad y la alimentista pagaba $561.00, con el desembolso de su préstamo estudiantil.**

33. El costo por el servicio de agua estaba incluido en la renta del apartamento.

34. **No se demostró que el pago de este apartamento fuera consultado con el alimentante.**

35. Adicional al pago de renta del apartamento, la alimentista pagaba el servicio de electricidad del apartamento, regularmente la factura ascendía a $80.00, de los cuales la alimentista pagaba la mitad, es decir, $40.00.

36. La alimentista vivió durante un año en ese apartamento.

37. La alimentista declaró, que, el compartir un apartamento con otra persona no le beneficiaba para sus estudios, pues le afectaba en sus calificaciones, por lo que, decidió mudarse sola a otro apartamento para el periodo de "fall 2023".

38. El canon de arrendamiento mensual por el nuevo apartamento era de $1,400.00, el cual incluía el servicio de agua e internet y no incluía el pago de electricidad.

39. **No se demostró que el cambio a este apartamento fuera consultado con el alimentante.**

40. La alimentista declaró, que tenía gastos por comida en el hogar ascendentes a $150.00 aproximadamente.

41. La alimentista declaró, que, tenía gastos por comida fuera del hogar y que eran mayores de la comida en el hogar, pues, se quedaba estudiando hasta la noche en la universidad en ocasiones.

42. El costo regular por una comida en la cafetería de la universidad fluctuaba entre $15 y $20, la alimentista comía cerca de 20 ocasiones al mes fuera del hogar.

43. **El plan de salud es requerido por la universidad cuyo pago anual es de $4,000.00, es ofrecido por la propia institución y lo paga la alimentista "con los préstamos".**

44. La alimentista declaró, que la universidad le requiere que para sus estudios de farmacia utilice "scrubs", los cuales el set ascendía aproximadamente a $120.00 y necesitaba 10; no se presentó prueba documental a los efectos.

45. La alimentista indicó, que, la universidad le requería una bata blanca para laboratorio y su costo fluctuaba en $50.00 y necesitó dos.

46. La alimentista indicó, que, necesitaba un par de tenis cuyo costo ascendía a $150.00 aproximadamente.

47. La alimentista indicó, que, compró una computadora y que no recordaba cuánto pagó por ella.

48. La alimentista declaró, que, compró un ipad que la universidad le requería y pagó aproximadamente $500.00.

49. La alimentista compró un estetoscopio y el gasto ascendió a $60.00.

50. La alimentista declaró, que, no tiene gastos de libros, papeles ni bolígrafos pues todo es electrónico.

51. La alimentista indicó que necesitaba ropa para el cambio de clima mensual ascendente a $120.

52. La testigo declaró que estaba matriculada para el semestre de "fall 2023" donde tomaría un total de 18 créditos.

53. La prueba documental estableció, además, que, la alimentista estuvo matriculada para el periodo de agosto a diciembre de 2023.

54. **La alimentista no evidenció su progreso académico para el periodo de "fall 2023".**

55. **La alimentista no evidenció los costos de matrícula, plan médico y otros gastos para el periodo de "fall 2023".**

56. **La alimentista admitió haber tomado préstamos para este periodo,** sin embargo, indicó que no recordaba su cuantía.

57. No se proveyó prueba documental alguna con relación a los ingresos que recibiría la alimentista, según admitió en su testimonio, correspondiente al periodo de "fall 2023".

58. **La alimentista declaró reiteradamente, que, cubría los costos de matrícula de sus estudios, hospedaje, alimentos, vestimenta, materiales, transporte, entiéndase todos sus gastos mensuales, con el "sobrante del préstamo estudiantil".**

59. **La alimentista declaró, que, cuando el sobrante de su préstamo estudiantil no le dio solicitó ayudas adicionales como fue el trabajo que obtuvo por medio de la decana de su universidad.**

60. **La alimentista indicó, que, cuando el sobrante de[sic] préstamo estudiantil no le daba pagaba con su tarjeta de crédito y luego pagaba la tarjeta de crédito con el sobrante del préstamo estudiantil.**

61. La alimentista le solicitó alimentos a su padre para culminar sus estudios.

62. **No obra en autos constancia de que para el periodo de enero a mayo de 2024 la alimentista hubiese cursado estudios.**

63. **La alimentista declaró, que, culminó su bachillerato en el mes de mayo de 2024 y que, además, asistió a actos de graduación con su familia, empero, no obra en autos prueba documental a los efectos.**

64. **Tampoco obra en autos evidencia que sustente el progreso académico de la alimentista al culminar su grado de bachillerato.**

65. La alimentista declaró, que, le restan dos años para culminar su doctorado en farmacia.

66. **No se presentó evidencia documental ni testifical que sustente que la alimentista se hubiese matriculado posterior al mes de mayo de 2024, para continuar con sus estudios de post**

**grado.** Meramente como parte del directo se le inquirió a la alimentista sobre cuándo comenzaron los estudios que "estaba cursando hoy".

67. Como parte del contrainterrogatorio se le inquirió a la alimentista si había presentado la matrícula para el doctorado a lo que respondió que sí, e identificó el "exhibit 2" correspondiente a la transcripción de crédito de la Universidad de Samford para sustentar este hecho.

68. Luego de que se le solicitara a la alimentista que indicara en qué parte del documento se mostraba la matrícula ella indicó, que, "dice doctorado en farmacia y aquí están las clases que yo he tomado".

69. Luego la alimentista declaró, que, a lo que se refería era al programa al que pertenecía.

70. El "exhibit 2" en el que se basó la alimentista para sustentar que presentó su matrícula de doctorado, refleja exclusivamente las clases que ha tomado en tres semestres en la Universidad de Samford en Alabama.

71. No se presentó prueba documental que sustente, que, para estudiantes de doctorado no hay "housing" en la universidad.

72. **La alimentista admitió, que, no dejó de pagar su apartamento, su carro, ni echar gasolina y tampoco se dio de baja de ninguna clase.**

73. A preguntas sobre si todos los gastos de los exhibits 10 (a) y (b) sin cuantificar si son o no razonables ascienden a $25,235.00, la alimentista declaró, que, no era necesario sumarlos, por lo que, tomamos como certera esta cuantía.

74. **Como parte del entrenamiento que realizaba la alimentista le pagaban a $16.00 la hora.**

75. La alimentista declaró, que, ella puede elegir dónde estudiar.

76. La capacidad económica de Luis Alonso Cortés se tomó a base de la prueba que la alimentista se proponía presentar en el juicio para sustentar su necesidad.[6]

En lo aquí pertinente, el foro apelado dispuso:

**En el caso de marras, no se demostró que la alimentista tuviera necesidad económica alguna. En su lugar, quedó demostrado que la alimentista ha**

---

[6] *Id.*, págs. 4-10. (Énfasis suplido).

**sido acreedora de una diversidad de ayudas económicas universitarias que van desde préstamos estudiantiles, becas, incluso trabajo que le ha permitido costear su carreara[sic] ambicionada. Estos beneficios recibidos por la alimentista de terceras personas debían ser considerados en su totalidad para cuantificar la necesidad aludida, de conformidad con lo dispuesto en el artículo 665 del Código Civil,** *supra*. **Asimismo, correspondía que tomáramos en consideración que la alimentista admitió que recibía ayudas de su madre y su abuela materna… La alimentista de forma reiterada admitió, que, todos sus gastos de alimentos, hospedaje, vestimenta, carro, plan médico, entre otros, han sido sufragados con "el sobrante de su préstamo estudiantil".** Nos vemos en la obligación de aclarar, que, contrario a lo señalado el alimentante ha contribuido a los costos de la carrera de la hija, mediante el pago de la pensión alimentaria que ha recibido en los pasados meses.

Del mismo modo, la alimentista ha admitido que su decisión de trasladarse al estado de Alabama para continuar sus estudios de farmacia no fue consultada con su padre y que, además, ella puede elegir dónde estudiar… Sin embargo, ello no resulta en que, se omita por completo su consideración y como resultado, se le imputen todos los gastos que la decisión unilateral de su hij[a] haya acarreado con independencia de la capacidad económica que ostente ese progenitor.

**… en el caso de autos no corresponde atribuírsele al alimentante los gastos de hospedaje que triplica los costos de un hospedaje dentro de nuestra jurisdicción, el pago mensual de un vehículo al cual no se le consultó y mucho menos todos los gastos que se derivan de tal actuación.**

…el hecho de que la alimentista pertenezca a un programa binario de bachillerato y doctorado en farmacia no significa que esté matriculada al presente. Ante el tribunal se presentó prueba documental y testifical que demostró exclusivamente, que la alimentista estuvo matriculada y aprobó cursos durante el periodo de agosto de 2022 a mayo de 2023… **se presentó prueba que demostró que la alimentista estuvo matriculada para el periodo de agosto de 2023, más no se demostró que hubiese culminado sus estudios para este periodo y mucho menos se demostró su índice académico. Mediante prueba testifical la alimentista admitió haber culminado su bachillerato en mayo 2024, pero tampoco se presentó prueba documental a los efectos.**

**… no obra en autos evidencia alguna que sustente, que, posterior, a culminar su bachillerato como parte del programa binario de bachillerato y doctorado en farmacia al que pertenece la alimentista, ésta se haya matriculado para un nuevo periodo escolar… habiendo admitido la alimentista que culminó su bachillerato, no habiendo demostrado que posterior a ello se matriculó en un nuevo curso escolar y tampoco habiendo demostrado su necesidad de alimentos** nos vemos forzados a desestimar el caso ante nuestra consideración y en su consecuencia, relevar al

alimentante del pago de la pensión alimentaria a beneficio de la alimentista.

… la evidencia académica que se presentó, de matrícula y aprovechamiento académico recoge únicamente tres semestres entiéndase, agosto de 2022 a mayo de 2023. Para estos periodos no quedó demostrada necesidad económica alguna, al contrario, la alimentista contó con medios económicos suficientes para cubrir todos sus gastos. Posterior a ello, para el semestre de agosto de 2023, exclusivamente se presentó prueba de que la alimentista estaba matriculada para tomar 18 créditos y que había tomado préstamos estudiantiles. **Desconocemos el aprovechamiento académico que obtuvo la alimentista en este periodo y la cantidad de préstamos estudiantiles que recibió u otros ingresos. Del mismo modo, desconocemos si la alimentista estuvo matriculada para el periodo de enero a mayo de 2024, el aprovechamiento académico obtenido, los ingresos recibidos y la necesidad económica si alguna tuvo.**

…**ante este tribunal tampoco se presentó ápice de prueba alguno que demostrara, que, Adriana Alonso Salgado posterior a finalizar su bachillerato hubiese continuado sus estudios. Tampoco se demostró que la alimentista tuviera necesidad alguna,** pues los ingresos que demostró exclusivamente para el periodo de agosto 2022 a mayo de 2023 le permitieron cubrir todos sus gastos sin considerar las ayudas que admitió recibía de su madre y su abuela materna. **Posterior a estos periodos no contamos con evidencia suficiente que nos mueva a concluir que la alimentista ha continuado con sus estudios y que tenga alguna necesidad económica que la haga acreedora de una pensión alimentaria entre parientes.**[7]

Inconforme, la señora Alonso Salgado recurre ante nos mediante un recurso de *Certiorari* en el que alega que el TPI cometió los siguientes errores:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL REVOCAR LA SENTENCIA DICTADA EL 4 DE SEPTIEMBRE DE 2024 FUNDAMENTANDO LA MISMA EN LA CREDIBILIDAD QUE LE MERECIÓ EL TESTIMONIO DE LA RECURRENTE Y DICTANDO RESOLUCIÓN POSTERIOR EN LA CUAL DETERMINÓ QUE LA RECURRENTE NO PROBÓ CON SU TESTIMONIO EL APROVECHAMIENTO ACADÉMICO PARA EL PERIODO DE "FALL 2023, NI EVIDENCIÓ LOS COSTOS DE MATRÍCULA, PLAN MÉDICO Y OTROS GASTOS DE "FALL 2023" NI TAMPOCO EVIDENCIÓ QUE HUBIESE CURSADO ESTUDIOS DE ENERO A MAYO DE 2024, QUE SE HUBIESE GRADUADO DE BACHILLERATO Y QUE SE HUBIESE MATRICULADO POSTERIOR A MAYO DE 2024.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR EN LA RESOLUCIÓN DICTADA EL 28 DE OCTUBRE DE 2024 QUE LA RECURRENTE NO PROBÓ LA NECESIDAD DE LOS ALIMENTOS ENTRE PARIENTES TODA VEZ QUE SUFRAGÓ TODAS SUS NECESIDADES CON LOS PRÉSTAMOS ESTUDIANTILES, BECAS Y SALARIO QUE RECIBIÓ.

---

[7] *Id.*, págs. 16-18. (Énfasis suplido).

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

La Regla 47 de Procedimiento Civil regula la figura procesal de la reconsideración tanto para las sentencias como para los dictámenes interlocutorios emitidos por el tribunal de instancia. Al respecto, dispone:

> La parte adversamente afectada por una sentencia del Tribunal de Primera Instancia podrá presentar, dentro del término jurisdiccional de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la sentencia, una moción de reconsideración de la sentencia.
>
> La moción de reconsideración debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales.[8]

De otra parte, en lo que respecta a enmiendas o determinaciones de hechos iniciales o adicionales, la Regla 43.1 de Procedimiento Civil, establece lo siguiente:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya

---

[8] Regla 47 de Procedimiento Civil de 2009 (32 LPRA Ap. V).

presentado una moción para enmendarlas o no haya solicitado sentencia.[9]

Conviene destacar que el foro sentenciador goza de una amplia facultad de reconsiderar sus propios dictámenes, a solicitud de parte interesada o *motu proprio,* "con el propósito de ajustar las sentencias a la ley, tanto para corregir un error en que hayan podido incurrir al imponerlas como para ajustarlas a cualquier situación de hechos probados por una u otra parte".[10] Incluso, puede "reconsiderar su resolución, dejarla sin efecto y señalar la reconsideración para vista".[11] Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico, en adelante TSPR, ha establecido que si un tribunal "considera que se equivocó al apreciar la prueba" puede variar sus conclusiones de hechos en la resolución dictada en reconsideración si "están sostenidas por la evidencia admitida, y… no son claramente erróneas".[12]

**B.**

En lo aquí pertinente, cuando el menor adviene a la mayoría de edad, los gastos relacionados a la educación e instrucción deberán ser considerados para la fijación de la pensión, acorde a la siguiente norma:

> Si el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso.

> El tribunal, en atención a las habilidades personales, el potencial de desarrollo y el aprovechamiento académico del alimentista, puede establecer la cuantía, el modo y el plazo de la obligación.[13]

---

[9] Regla 43.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[10] *Pueblo v. Rodríguez Maldonado*, 185 DPR 504, 519-520 (2012).
[11] *El Mundo Inc., v. Tribunal Superior*, 92 DPR 791, 801 (1965).
[12] *Rosario Crespo v. AFF*, 94 DPR 834, 846 (1967).
[13] Art. 655 del Código Civil de Puerto Rico, 31 LPRA sec. 7533.

De modo, que quien "solicita "alimentos" para cursar estudios graduados *debe probar afirmativamente que es acreedor de tal asistencia económica*". En síntesis, entre los criterios a ser evaluados, habilidades personales y el potencial de desarrollo, el foro sentenciador tomará en consideración "la actitud demostrada por los esfuerzos realizados, la aptitud manifestada para los esfuerzos que desea proseguir a base de los esfuerzos académicos obtenidos, y la razonabilidad del objetivo deseado".[14]

La determinación del monto de la pensión alimentaria a la cual puede ser acreedor un hijo adulto universitario está incompleta si no se incluye la norma establecida en el Art. 665 del Código Civil de 2020, a saber:

> La cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista.
>
> Al estimar los recursos de uno y de otro se toma en cuenta el patrimonio acumulado, el potencial de generar ingresos, los beneficios directos e indirectos que recibe de terceras personas, el perfil de sus gastos que no son indispensables y su estilo de vida.[15]

Específicamente ello incluye "evaluar la situación económica de la alimentista y la falta o insuficiencia de medios económicos (trabajo a tiempo parcial, becas, préstamos, estudio y trabajo etc.) para sufragar los gastos de estudios".[16]

---

[14] M. Fraticelli Torres *et als.*, *El Código Civil de Puerto Rico de 2020: Primeras Impresiones*, San Juan, Ed. Fideicomiso para la escuela de Derecho Universidad de Puerto Rico, págs. 110-111 (citando a *Key Nieves v. Oyola Nieves*, 116 DPR 261, 267 (1985)). (Énfasis en el original).

[15] 31 LPRA sec. 7561.

[16] Oficina de Servicios Legislativos, Código Civil Año 2020 Comentado, pág. 651, https://8b1bf758-1982-44d6-af7c-944f8408e8fa.filesusr.com/ugd/5be21a_15cd7772b7ca4ecd84035ed394e1e517.pdf (última visita, 7 de febrero de 2025).

## C.

Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia.[17] Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia.[18] El fundamento de esta deferencia es que el juez de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla.[19] En vista de esta deferencia, los tribunales apelativos no intervendremos con la apreciación de la prueba reflejada en las determinaciones de hechos del tribunal apelado en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad, o que cometió un error manifiesto.[20]

No obstante, cuando las conclusiones de hecho se basan en prueba pericial o documental, el tribunal de apelaciones se encuentra en la misma posición que el tribunal de instancia.[21] De modo, que el tribunal intermedio no está obligado a conceder deferencia a la apreciación de la prueba del foro sentenciador.

## -III-

Para la señora Alonso Salgado erró el TPI al dejar sin efecto la *Sentencia*, luego de haberle impartido

---

[17] *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).
[18] *McConnel v. Palau*, 161 DPR 734, 750 (2004).
[19] *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001).
[20] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020).
[21] *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016).

credibilidad a su testimonio y a la prueba documental admitida. Esta conducta es a todas luces contradictoria. A su entender, para dejar sin efecto la *Sentencia* y emitir la *Resolución* recurrida, el foro sentenciador se basó en las alegaciones de la moción de reconsideración y solicitud de determinaciones de hechos adicionales y no en la prueba recibida.

En cambio, para el señor Alonso Cortés la *Resolución* recurrida es correcta, tanto en sus determinaciones de hechos como en sus conclusiones de derecho. Esto es así, porque los tribunales tienen amplia facultad para reconsiderar sus decisiones, incluyendo la credibilidad que le merecieron los testigos. Además, la señora Alonso Salgado no ha identificado prueba que demuestre que al reconsiderar su *Sentencia* el foro de instancia haya incurrido en arbitrariedad o abuso de discreción. Finalmente, la prueba admitida estableció que la señora Alonso Salgado obtuvo ingresos suficientes para cubrir todos sus gastos, incluyendo sus estudios universitarios.

De la *Resolución* recurrida se desprende que al reconsiderar la *Sentencia* y reevaluar el testimonio de la señora Alonso Salgado y la prueba documental que obra en autos, el TPI concluyó que esta solicitó y obtuvo ayudas económicas.

Específicamente, determinó que para los periodos "Fall 22", "Spring 23" y el año académico de agosto de 2022 a mayo de 2023, la señora Alonso Salgado recibió ingresos por concepto de préstamos estudiantiles, becas, estudio y trabajo, pensión alimentaria sufragada por el señor Alonso Cortés y ayudas de su madre y abuela materna.

Además, el foro primario concluyó que no había evidencia de progreso académico del periodo de estudios conducentes a terminar el bachillerato después de mayo de 2024.

De la reevaluación de la totalidad de la prueba realizada por el foro sentenciador, se deprende que se desarrolló la "tormenta perfecta" que justifica denegar la petición de alimentos. Tenía ingresos para cubrir sus gastos y no demostró progreso académico. Para alcanzar esta conclusión, el foro sentenciador consideró probados los ingresos devengados por concepto de trabajo a tiempo parcial, becas, préstamos, estudio y trabajo.

Además, incluyó en su análisis los beneficios indirectos recibidos por la señora Alonso Salgado, tales como la pensión alimentaria sufragada por el señor Alonso Cortés y las ayudas recibidas de parte de la madre y la abuela materna de la solicitante.

En cambio, el foro apelado determinó que no se probó el progreso académico de la señora Alonso Salgado.

La señora Alonso Salgado impugna dicho resultado. Sugiere que el TPI carece de facultad para, a nivel de reconsideración, dejar sin efecto la sentencia original. No tiene razón. Como se desprende de la normativa previamente expuesta, los tribunales tienen amplia facultad para reconsiderar sus determinaciones, incluyendo su apreciación de la prueba testifical, esto claro está, si sus determinaciones están apoyadas en la evidencia admitida y no son erróneas.

Sin embargo, en cuanto a este último aspecto, falló la señora Alonso Salgado en probar sus alegaciones. Ello obedece a que como no presentó la transcripción de la prueba oral, no nos puso en posición de determinar si la

apreciación de esta por el foro sentenciador fue correcta. A esos efectos, conviene recordar que quien desee impugnar las determinaciones de hechos del foro primario "deberá colocar al tribunal revisor en posición de atender correctamente sus planteamientos sobre la apreciación y la credibilidad de la prueba desfilada".[22]

### -IV-

Por los fundamentos previamente expuestos, se confirma la *Resolución* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[22] *Pueblo v. Pérez Delgado*, 211 DPR 654, 674 (2023).